RAY, J.
 

 Paul D. and Shelley Z. Srygley, Appellants, appeal the final summary judgment entered against them in a quiet-title action involving a condominium unit in Bay County, Florida. Capital Plaza, Inc., Appellee, initiated the action, claiming that it is the rightful owner of the unit pursuant to a tax deed it obtained through the tax deed sale process set forth in sections 197.512, 197.522, and 197.542, Florida Statutes (2009). Because the tax deed sale was conducted in accord with the statutory requirements, we affirm.
 

 The material facts are not in dispute. Before Appellee recorded its tax deed, Appellants were the titleholders to the property at issue. Because Appellants failed to pay the ad valorem taxes for 2006, Bay County issued a tax certificate. Following an application for a tax deed, the clerk of the court provided Appellants notice of the application and the date of the property sale, through certified U.S. mail. In addition, the clerk advertised the upcoming sale once a week for four consecutive weeks in an area newspaper of general circulation. The highest bidder at the first sale failed to meet the statutory payment obligations, so the clerk canceled the sale.
 

 After canceling the first sale, the clerk made one advertisement in the same newspaper for the date of the second sale, but did not send Appellants any individualized notice. At the second sale, Appellee entered the highest bid and satisfied the statutorily mandated payment require
 
 *1212
 
 ments. Subsequently, Bay County conveyed the property to Appellee by tax deed.
 

 Thereafter, Appellee instituted the instant action against Appellants and certain lienholders, asserting that any rights the defendants may have had in the property were extinguished by the tax deed.
 
 [1]
 
 Appellants filed an answer, but did not assert the affirmative defenses that they paid the taxes or did not receive adequate notice of the application for tax deed and date of the first sale. Appellee moved for final summary judgment, arguing that the undisputed facts showed that the clerk properly granted it the property after having notified Appellants of the tax deed application and the date of the tax deed sale. The court agreed, granted Appellee’s motion, and entered final summary judgment quieting title in Appellee.
 

 On appeal, Appellants argue that the trial court misconstrued the statute governing notice of a second tax deed sale. They claim that, as the titleholders, they were entitled to individualized notice of the second sale. In the alternative, Appellants argue that if the trial court’s construction is correct, the statute violates their right to due process. The resolution of these issues depends on our construction of the relevant statutes and' a consideration of the effect of those statutes on a property owner’s right to due process. As a result, the de novo standard of review applies.
 
 McNealy v. Verizon Support Ctr./Sedgwick Claims Mgmt. Servs.,
 
 79 So.3d 192 (Fla. 1st DCA 2012) (setting forth the standard of review governing statutory construction);
 
 R.J. Reynolds Tobacco Co. v. Martin,
 
 53 So.3d 1060, 1071 (Fla. 1st DCA 2010) (noting that the consideration of whether the right to due process has been violated is to be conducted de novo).
 

 Established rules of statutory construction demand that when interpreting a statute, courts should give terms their plain meaning.
 
 Carmack v. State, Dep’t. of Agric.,
 
 31 So.3d 798, 800 (Fla. 1st DCA 2009). When the plain meaning of a statute is clear, a court should look no further than the language of the statute.
 
 Wolf v. Progressive Am. Ins. Co.,
 
 34 So.3d 81, 81 (Fla. 1st DCA 2010). Accordingly, we begin our analysis with a review of the pertinent statutes.
 

 Pursuant to section 197.522(l)(a), Florida Statutes (2009), the tax deed sale process begins with notification by certified or registered mail to certain persons identified in section 197.502(4), Florida Statutes (2009), including any legal titleholder of record. This notification must advise the recipient that an application for a tax deed has been made, and it must be mailed at least twenty days before the date of the sale. § 197.522(l)(a). Additionally, section 197.512(1), Florida Statutes (2009), mandates that after a tax certificate has been acquired and all fees connected therewith are paid, “the clerk shall publish a notice once each week for 4 consecutive weeks at weekly intervals in a newspaper selected as provided in s. 197.402.”
 

 Section 197.542(2), Florida Statutes (2009), requires that at the time of the sale, the high bidder pay five percent of the bid or $200.00, whichever is greater. The statute further requires that the high bidder tender full payment of the balance of the bid, plus taxes and costs, within twenty-four hours of the sale. § 197.542(2). The high bidder’s failure to comply with these obligations requires the clerk to cancel the sale and readvertise a new tax deed sale of the property.
 
 Id.
 
 Section 197.542(3), Florida Statutes (2009), describes the procedure and notice require-
 
 *1213
 
 merits for all necessary resales due to cancellation of the first sale. It provides in pertinent part as follows:
 

 [T]he clerk shall immediately readver-tise the sale to be held within BO days after the date the sale was canceled. Only one advertisement is necessary. No further notice is required ... The clerk must receive full payment before the issuance of the tax deed.
 

 § 197.542(3) Fla. Stat. (2009).
 

 Appellants do not assert any deficiency in the notice they received about the initial tax deed application and date of sale. Their only complaint is that they were not given similar notice of the second tax deed sale. However, Appellants cite no statutory language or case law suggesting that section 197.522(l)(a) has any application to notification of any tax deed sales following a cancellation of the first one. The fact that the Legislature enacted a separate section prescribing the clerk’s notification duties for all subsequent tax deed sales belies Appellants’ claim that section 197.522(l)(a) applies.
 
 See
 
 § 197.542(2) Fla. Stat. (2009) (requiring the clerk to “readvertise the sale as provided in this section,” rather than section 197.522). In section 197.542(3), the Legislature uses clear and unequivocal language in setting forth the requirements for a second sale; namely, the clerk must read-vertise the sale once, the new sale must take place within 30 days of the canceled sale, and no other notice is necessary. The Legislature’s precise description of the initial notice requirements in section 197.522(l)(a) indicates that it knew how to put in specific language as to re-notification in the event an initial sale is canceled and a second sale necessitated.
 
 Cf. K.J.F. v. State,
 
 44 So.3d 1204, 1210 (Fla. 1st DCA 2010) (comparing statutes to illustrate that the inclusion of a certain requirement in one circumstance and the omission of it in another indicates that the Legislature intended not to impose the requirement where it did not expressly so state). That the Legislature did not include any language to the effect that titleholders must be re-notified through certified mail of any subsequent tax deed sales suggests that it did not believe such notice was necessary.
 

 In urging us to reject the trial court’s interpretation of section 197.542(3) as vio-lative of the right to due process, Appellants point us to
 
 Miller v. Knapp,
 
 823 So.2d 203 (Fla. 4th DCA 2002). There, the clerk of the court sold a landowner’s property to satisfy delinquent taxes.
 
 Miller,
 
 823 So.2d at 204. The clerk canceled the initial sale when the high bidder failed to make payment, triggering the readvertisement provisions of section 197.542(3).
 
 Id.
 
 The landowner sued to invalidate the tax deed sale under the theory that because he was not given notice of the second sale, he was deprived of his property without due process.
 
 Id.
 
 The court denied his claim, holding that when a landowner is notified of a pending tax deed sale of his property, “secondary notices are not mandatory for due process concerns.”
 
 Id.
 
 After reaching this conclusion, the
 
 Miller
 
 court emphasized that “the owner failed to attend the [first] sale and bid on the property” and speculated that “[h]ad he done so, undoubtedly the Clerk would have included the owner in the follow-up sale.”
 
 See id.
 
 This language indicates that the
 
 Miller
 
 court intended to leave open the question of whether the lack of a second notice after the cancelation of a tax deed sale would constitute a due process violation.
 

 Mindful of our duty to construe a statute as constitutional whenever possible,
 
 see Dawson v. Saada,
 
 608 So.2d 806, 809 (Fla.1992), we reject the argument that a second individualized notification to property owners is constitutionally required. As a general rule, the Legislature
 
 *1214
 
 has the authority to “determine by what process and procedure legal rights may be asserted and determined provided that the procedure adopted affords reasonable notice and a fair opportunity to be heard before rights are decided.”
 
 Peoples Bank of Indian River County v. State, Dep’t of Banking & Fin.,
 
 395 So.2d 521, 524 (Fla.1981). In a case concerning whether a landowner received sufficient notice of a pending tax deed sale to comport with his right to due process, the Florida Supreme Court held that due process includes only such notice as is “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”
 
 Dawson,
 
 608 So.2d at 808 (quoting
 
 Mullane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The court went on to explain, “Subject to this limitation, the [Ljegislature has the authority to determine the extent and character of the notice which shall be given by the state before property is sold for nonpayment of taxes.”
 
 Id.
 

 Appellants are correct in highlighting that Florida has a clear policy of protecting individual property rights, and that a derogation of those rights may occur only after the individual has been notified of any pending action that would affect those rights. However, this standard is satisfied by the provision of individualized notice to the titleholders before the first sale. Appellants, like the landowner in
 
 Miller,
 
 received proper notice of the initial tax deed application and sale date. There is no evidence in the record that Appellants did or did not attend the initial sale. Regardless, after receiving the initial notice, they were aware that movements were afoot that would affect their property rights. If they neglected to solicit information from the clerk as to the disposition of their property, they did so at their own peril. Considering that Appellants knew, through receipt of certified mail notice from the clerk, that their property was subject to a tax deed sale for failure to pay taxes, and that they neither placed the winning bid at the first sale nor redeemed the property by paying the taxes they owed, they were not taken unaware when the property was sold to Appellee at the second sale.
 

 As we read the relevant statutes, it is clear that the Legislature did not intend that a government official be solely responsible for protecting a citizen’s property rights; instead, the Legislature must have intended for the affected citizen to take action to protect his or her interests after the initial notification because the statute, by its plain language, requires only one individualized notification to the titleholders before property may be sold for delinquent taxes. The Legislature’s definition of requisite notice in the tax deed sale scenario is entirely within the due process boundaries set by both Florida and federal courts. In the case at bar, the clerk of the court met all notice requirements for the first and second tax deed sales, and Appellee satisfied its payment obligations to acquire the tax deed to the property in question. In consideration of the applicable statutes and foregoing facts, we affirm the trial court’s entry of final summary judgment quieting title in Capital Plaza, Inc.
 

 AFFIRMED.
 

 BENTON, C.J., and WETHERELL, J„ concur.
 

 [1]
 

 . Any interest the lienholders may have had in the property is not at issue in this appeal.